JOHN PEEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Peel v. Commissioner
Docket No. 7912-77.
United States Tax Court
T.C. Memo 1979-257; 1979 Tax Ct. Memo LEXIS 268; 38 T.C.M. (CCH) 1025; T.C.M. (RIA) 79257; July 10, 1979, Filed Robert M. Tyle, for the petitioner. Edward D. Fickess, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the 1975 taxable year in *269 the amount of $697.35. The issue for our decision is whether petitioner suffered a casualty loss of $1,686 to his Corvette automobile in that year. FINDINGS OF FACT John Peel (petitioner) was a legal resident of Elmira, New York, at the time he filed his petition in this case. He filed his 1975 Federal income tax return with the Internal Revenue Service Center at Andover, Massachusetts. Petitioner purchased a 1973 Corvette automobile in 1974 for $6,206. It was a two door coupe model with a gold exterior and black interior. It was equipped with power steering and an AM-FM radio but it did not have either air conditioning or an automatic transmission. When purchased, the Corvette had 12,000 miles on its odometer. During his first year of ownership petitioner drove his Corvette 10,000 miles. In 1975, petitioner's Corvette was involved in two automobile accidents. The first accident occurred on May 8, 1975, when he apparently rear-ended another car. Extensive damage was done to the Corvette's headlamp system. The headlamps were promptly repaired by petitioner's insurance company. The second accident occurred on July 15, 1975 when the Corvette was struck on its front *270 left side by another car. This accident shattered the front left fiberglass body of the Corvette and twisted the front suspension frame out of its normal shape. Again the petitioner received insurance reimbursement for actual repairs for all but $100 of the cost of such repairs. The reimbursement by the insurance company for each of the two accidents can be summarized as follows: May 8, 1975
July 15, 1975
Accident
Accident
Total Repair Cost $470 $894
(Less) Insurance
Reimbursement
370
794
Petitioner's Cost
of Repairs $100 $100
On his 1975 Federal income tax return, the petitioner claimed casualty losses attributable to the two accidents in the amounts of $830 and $856, respectively, determined as follows: May 8, 1975
July 15, 1975
Accident
Accident
Fair Market Value (FMV)
before accident
$6,125
$6,550
(Less) FMV after accident
4,825
4,800
$1,300
$1,750
(Less) Insurance
Reimbursement
370
794
Total Loss $ 930
956
(Less) § 165(c)(3)
limitation
100
100
Loss Claimed $ 830 $ 856
Total Loss Per Return
$1,686
On or about February 9, 1976, petitioner disposed of his Corvette by trading *271 it in for a new 1976 Triumph TR-7 Coupe. He received a trade-in allowance of $5,425. According to the National Automobile Dealers Association (NADA), petitioner's 1973 Corvette had the following trade in and average retail values during 1975: [1]
April 1975
August 1975
December 1975
Trade-In
$5,000
$5,375
$5,225
Average Retail (FMV)
5,975
6,350
6,200
The parties have stipulated that the NADA figures constitute a fair and unbiased opinion of the average retail and trade-in values of a 1973 Corvette. OPINION Section 165 [2] provides in pertinent part that: (a) GENERAL RULE. -- There shall be allowed as a deduction any loss sustained in the taxable year and not compensated for by insurance or otherwise. (b) AMOUNT OF DEDUCTION. -- For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section *272 1011 for determining the loss from the sale or other disposition of property. (c) LIMITATION ON LOSSES OF INDIVIDUALS. -- In the case of an individual, the deduction under subsection (a) shall be limited to -- * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * With respect to casualty losses, the regulations are quite detailed and extensive. See section 1.165-7, Income Tax Regs. Basically they provide that a casualty loss is allowable only in the year in which it is sustained and the amount of loss is limited to the lesser of the difference in fair market value before and immediately after the casualty or the adjusted basis of the property. [3] This amount must be reduced by any insurance recovered and the $100 limitation on individual losses. Section 165(c)(3); section 1.165-7(b)(3), Income Tax Regs.
*273 Petitioner contends that in each accident, the subsequent repairs, reimbursed by insurance except for the deductible, did not result in a complete restoration of the value of the Corvette. This is due, petitioner maintains, to the unique construction nd status of the Corvette. According to petitioner, any aficionado of a Corvette would not be willing to pay the same price for a Corvette that had been in an accident as one that had not. In this regard petitioner asserts that a true aficionado of the car could detect under close examination that his car had been damaged and repaired. Respondent, on the other hand, contends that petitioner did not suffer any deductible loss because the repair work, reimbursed by insurance, [4] fully restored the car to its pre-accident value. In view of the documentary evidence submitted and the testimony given at the trial, we agree with respondent that petitioner did not suffer any deductible casualty loss. We reject petitioner's bare and unsupported statements that the value of his Corvette after *274 repairs was any less than its pre-accident value. In fact, for purposes of determining the second casualty loss deduction the petitioner used a fair market value ($6,550) which was higher than the fair market value assigned to the car prior to the first accident ($6,125). The second accident occurred a little over two months after the first. It is inconceivable that petitioner, having suffered such an alleged decline in value after the first accident, could regain and surpass the original fair market value by the second accident. In addition, petitioner's subsequent trade-in of his Corvette and the allowance received on the trade-in do not support his claim for deduction. According to NADA, the average trade-in value of a 1973 Corvette in December, 1975 was $5,225. In February, 1976, petitioner was given a trade-in allowance of $5,425. The NADA valuations constitute a fair and unbiased opinion of the value of a 1973 Corvette.If petitioner's car was worth less because of its prior accident history, we doubt whether any car dealer would have offered a trade-in allowance so approximating the average trade-in amount for a 1973 Corvette. In this regard, we note that the petitioner *275 indicated that car dealers generally examine a trade-in thoroughly before offering any allowance. Accordingly, we hold that the petitioner is not entitled to any casualty loss deduction in 1975. To reflect the concessions of the parties on other issues and our conclusion with respect to the disputed issue, Decision will be entered under Rule 155. Footnotes
1. The figures shown include the value of the options (AM-FM radio, power steering) petitioner had on his Corvette.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
3. Section 1.165-7(a), (b), Income Tax Regs. provides: * * *
(2) METHOD OF VALUATION. (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property. (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. (3) DAMAGE TO AUTOMOBILES. An automobile owned by the taxpayer, whether used for business purposes or maintained for recreation or pleasure, may be the subject of a casualty loss, including those losses specifically referred to in subparagraph (1) of this paragraph. * * * (b) AMOUNT DEDUCTIBLE. -- (1) GENERAL RULE. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either -- (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved. * * *↩
4. The $100 of unreimbursed repair bills is not permitted as a deduction under section 165(c)(3) because of that provision's $100 limitation.↩